UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

LAVERNE T. PARKER-FRANK, )
)
        Plaintiff, )   Case No. 4:05-cv-71
)
v. )   Honorable Robert Holmes Bell
)
COMMISSIONER OF )
SOCIAL SECURITY, )
)   **REPORT AND RECOMMENDATION**
        Defendant. )
_____)

       This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB). Plaintiff filed her DIB application on May 7, 2001, alleging a August 15, 2000 onset of disability. (A.R. 58-60). Plaintiff's claim was denied on initial review, and as a disability redesign prototype case, her claim was not subject to administrative review at the reconsideration stage. (A.R. 31). On October 15, 2002, plaintiff received a hearing before an administrative law judge (ALJ) at which plaintiff was represented by counsel. (A.R. 333-71). On April 25, 2003, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 35-42). Plaintiff sought review by the Appeals Council, and on August 29, 2003, the Appeals Council vacated the ALJ's decision and remanded the matter for resolution of the issue of the nature and severity of plaintiff's obesity impairment:

> The record indicates that the claimant has severe degenerative arthritis disease (Exhibit 5F). However, the record is unclear regarding the nature and severity of the claimant's obesity impairment. See Exhibits 1F-6F. The evidence also shows that the claimant is 5'6" tall and

>has a history of obesity (Exhibit 6F). The claimant's weight has ranged from 244-252 pounds. There is no rationale in the hearing decision that indicates how the claimant's obesity impacts on her residual functional capacity to work. Further evaluation of the claimant's obesity is warranted (See Appendix 1, Subpart P, Regulations No. 4; 20 CFR 404.1523 and Social Security Ruling 00-3p).

(A.R. 245). On January 12, 2004, plaintiff received a hearing before a different ALJ. (A.R. 372-95). Plaintiff was represented by counsel. On June 21, 2004, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 14-25). The Appeals Council denied review on May 20, 2005 (A.R. 7-9), and the ALJ's decision became the Commissioner's final decision. Plaintiff filed a timely complaint in this court seeking review of the Commissioner's decision denying her DIB claim.

>Plaintiff's brief presents the following statement of issues:

>I. WHETHER THE COMMISSIONER FAILED TO FULLY COMPLY WITH THE REMAND ORDER OF THE APPEALS COUNCIL AS TO OBESITY AS REQUIRED UNDER 20 C.F.R. § 404.1523 AND IN ACCORDANCE WITH SSR 85-28 AND SSR 96-3P.

>II. WHETHER THE COMMISSIONER FAILED TO CONSIDER THE INTERACTION OF ALL THE MEDICALLY DETERMINABLE SEVERE AND NON-SEVERE IMPAIRMENTS OF THE PLAINTIFF ON HER ABILITY TO WORK AS REQUIRED BY SSR 96-8P.

>III. THE ALJ'S CREDIBILITY FINDING IS NOT BASED ON SUBSTANTIAL EVIDENCE.

(Statement of Issues, Plf. Brief at 2, docket # 7). Upon review, I find that none of plaintiff's arguments provide a basis for disturbing the Commissioner's decision and recommend that the Commissioner's decision be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997); *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston*, 245 F.3d at 534 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ – would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence

supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## Discussion

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on August 15, 2000, her alleged onset of disability, and continued to meet the requirements through the date of the ALJ's decision. Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. The ALJ found that plaintiff had severe impairments of obesity and degenerative arthritis of the knees. Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. The ALJ determined that plaintiff's subjective complaints were not fully credible. The ALJ made the following residual functional capacity (RFC) determination:

> The claimant has the residual functional capacity to perform the requirements of work activity except for lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking for more than a total of two hours in an eight-hour workday; sitting for more than a total of six hours in an eight-hour workday; working without the opportunity to sit and stand at her option; squatting; climbing ladders, ropes, or scaffolds; balancing, stooping, kneeling, crouching, crawling, or climbing ramps or stairs more than occasionally, using the lower extremities for activities which require pushing, pulling, or the operation of foot controls more than occasionally; and working with concentrated exposure to extremes of temperature.

(A.R. 24). The ALJ found that plaintiff was unable to perform her past relevant work. Plaintiff was 47 years old as of the date of her alleged onset of disability. Thus, plaintiff was classified as a younger individual at that time. By the time of the ALJ hearing, plaintiff was classified as an individual closely approaching advanced age, because she was then 51 years old. Plaintiff has a

high school education. The ALJ found that plaintiff retained a RFC for a limited range of light work. The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age and with her RFC, education, and work experience, the VE testified that there were more than 26,000 jobs within the lower two-thirds of Michigan's lower peninsula that plaintiff was capable of performing. (A.R. 392-93). The ALJ held that this constituted a significant number of jobs. Using Rules 202.14 and 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 14-25).

**1.**

Plaintiff's initial claim of error is "Whether the Commissioner failed to fully comply with the remand order of the Appeals Council as to obesity as required under 20 C.F.R. § 404.1523 and in accordance with SSR 85-28 and SSR 96-3p." (Plf. Brief at iii and 12). Plaintiff's brief does not contain any developed argument corresponding to this statement of error. The entire argument under this heading is devoid of citation to any authority and consists of the single paragraph set forth verbatim below:

> The analysis of obesity in the decision of June 21, 2004, is both incomplete and inaccurate. It states that "the record contains no evidence to establish that her obesity impacts her cardiac or respiratory functioning to a significant degree." The DDS physician stated that "her feet almost appear to be like swollen balloons". (Tr. 121). There is no discussion of the effect of the limitation on activity imposed by her arthritic condition on her weight gain.

(Plf. Brief at 12). Because plaintiff's brief does not contain any developed argument corresponding the statement of error, the argument should be deemed waived. Appellate courts generally find waiver under these circumstances. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 318 (6th Cir. 2005); *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 462 (6th Cir. 2003); *United States*

*v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) ("[I]ssues averted to in a perfunctory manner, unaccompanied by some effort at developed augmentation, are deemed waived."); *see also Caudill v. Hollan*, 431 F.3d 900, 915 n.13 (6th Cir. 2005); *Kennedy v. Commissioner*, 87 F. App'x 464, 466 (6th Cir. 2003).

Alternatively, ignoring waiver, plaintiff's proffered "arguments" do not provide any basis for disturbing the Commissioner's decision. Plaintiff argues that the ALJ failed to "fully comply" with the Appeals Council's remand order. The second time the matter was before it, the Appeals Council denied review, indicating that the Appeals Council found no violation of its order. The scope of this court's review is narrow and defined by statute. The scope of review does not encompass whether an ALJ "fully" complied with an order of the Appeals Council. *See Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). Plaintiff cites 20 C.F.R. § 404.1523, a regulation regarding "multiple impairments." No specific violation of this regulation is identified by plaintiff, and no violation of the regulation is apparent. The pattern is repeated in plaintiff's citation of the two social security rulings. *See Social Security Ruling Policy Interpretation Ruling Titles II & XVI: Considering Allegations of Pain & Other Symptoms In Determining Whether a Medically Determinable Impairment is Severe*, SSR 96-3p (SSA July 2, 1996)(reprinted at 1996 WL 374181); *Program Policy Statement Titles II & XVI: Medical Impairments That Are Not Severe*, SSR 85-28 (SSA 1985)(reprinted at 1985 WL 56856).[1] Plaintiff asserts that the ALJ's analysis of plaintiff's obesity was "incomplete and inaccurate" because the ALJ found that the record did not contain evidence establishing that plaintiff's obesity "impact[ed] her cardiac or respiratory functioning to

---

[1] The ALJ found that plaintiff had severe impairments at step-two of the sequential analysis. He found that plaintiff was not disabled at step-five.

a significant degree." (Plf. Brief at 12). Rather than attempting to identify where record medical evidence documents a significant impact on plaintiff's cardiac or respiratory functioning, plaintiff's brief wanders into a discussion of the appearance of plaintiff's feet. (*Id.*). Plaintiff's argument is illogical and frivolous. Finally, plaintiff complains that the ALJ's opinion did not contain a discussion "of the effect of the limitation on activity imposed by her arthritic condition on her weight gain." (*Id.*). The record is decidedly to the contrary. The ALJ's opinion expressly addressed plaintiff's level of activity and the functional limitations imposed by her obesity and degenerative arthritis. (A.R. 18-21).

**2.**

Plaintiff's second statement of error is that the Commissioner "failed to consider" the interaction of all the medically determinable severe and non-severe impairments on plaintiff's ability to work as required by SSR 96-8p. (Plf. Brief at 13). I find that this argument is patently meritless, because the ALJ's opinion clearly shows that he considered the combined effect of plaintiff's impairments and that he expressly cited SSR 96-8p:

> The term "residual functional capacity" is defined by the Regulations as the most an individual is capable of performing with respect to work activity after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks (20 CFR § 404.1545 and Social Security Ruling 96-8p).
>
> The undersigned is aware that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. The evidence of record clearly documents that the claimant's obesity is significant, and the undersigned finds it reasonable to conclude that such impacts the functioning of her knees, especially in light of her history of more than one surgery to each knee; however, the record contains no evidence to establish that her obesity impacts her cardiac or respiratory functioning to a significant degree. No treating or examining medical source has reported any cardiac abnormality upon examination of the claimant, nor does the record document any abnormality with respect to her lung fields or pulmonary functioning. The undersigned also

notes for the record that although it was the claimant's testimony that she believes she weighed about 196 pounds at the time she ceased working in August 2000 and that she attributed her subsequent 50 pound weight gain to being "less active," the record indicates that her weight was recorded at 244 pounds upon examination in May 2000 (Exhibit 1f), and has not been recorded at less than 240 pounds since that time. Obviously, the claimant has an inaccurate recollection with regard to the last time she weighed less than 200 pounds.

The evidence of record clearly documents that the claimant has arthritis of both knees with a history of surgeries to each knee in 1998 and again in 2002 (Exhibits 1f and 5f); however, there is no indication that she experienced any complications during the recovery period that followed each surgery. The results of an x-ray study of her left knee, performed at the time the treatment record begins in May 2000, showed only "slight" arthritis for which she was advised to use over-the-counter/nonprescription Motrin (Exhibit 1f/p30). No significant revision of this regimen was effected for over a year as the report from Dr. Kountanis noted that such was the medication the claimant reported using for her knee symptoms when she was examined in July 2001 (Exhibit 1f/p17).

Treatment notes from R. Thomas, M.D., the orthopedic surgeon who performed the arthrosporic surgeries to the claimant's knees in February and April 2002, indicate that examination of her left knee in December 2001 revealed mild crepitus but no effusion in the knee joint and nearly a full range of motion. Examination of her right knee in March 2002 also revealed crepitus and grinding under the patella but no effusion and nearly a full range of motion. Dr. Thomas reported that his last examination of the claimant in July 2002 revealed "a full range of motion and no effusion in the knee." Dr. Thomas also noted the claimant's acknowledgment of inconsistent compliance with strengthening exercises as well as inconsistent attendance at physical therapy due to "transportation problems" (Exhibit 3f).

The record is in clear showing that the claimant has not received treatment other than medication therapy for her knee symptoms since her last visit to Dr. Thomas in July 2002. The record is also clear in showing that she has not required an assistive device for ambulation on a regular and continuing basis since August 15, 2000. S. K. Jones, C.F.N.P., the claimant's primary treating medical source, indicated that examination on January 15, 2003 revealed no erythema or edema in the claimant's hands or any joint, good grasping ability of her hands, and a full range of motion in her lower extremities (Exhibit 8f/p10). There is no documentation from any treating medical source to support the claimant's allegation that she experiences the side-effect of drowsiness from her use of Vicodin or the medication she is prescribed for her knee pain. Drowsiness from her use of Elavil, which the undersigned notes has only been prescribed since December 16, 2003 per the treatment note of Ms. Jones (Exhibit 8f/p4), is not an issue since the medication is prescribed for use at bedtime and she testified that she takes it as directed.

The undersigned finds it interesting that, per the claimant's testimony, she does not use Vicodin or her knee medication "if she has to go somewhere," which clearly suggests that

>   she is capable of engaging in activities without benefit of her medications. Per her own testimony and reports, she has engaged in a significant amount of daily activities since August 15, 2000. Furthermore, none of her treating medical sources have offered limitations or restrictions upon the claimant's ability to perform the physical demands of work that are in any way inconsistent with the limitations found by the undersigned in the assessment of her residual functional capacity.
>
>   For the reasons cited above, the undersigned finds that the claimant's allegation of inability to perform work activity because of the limiting effects of her impairments is not credible to the degree alleged. This determination has been made in light of the claimant's medical history, her medication usage, the findings made upon objective clinical examinations, and discrepancies between her allegations and the information contained in the medical reports of record.

(A.R. 20-22).

Plaintiff argues in conclusory fashion that the ALJ did not mention the "most current" clinical evaluations of the plaintiff relevant to her type II diabetes, hypertension and low back condition. (Plf. Brief at 14). Unfortunately, plaintiff makes no attempt to identify where these "most current" evaluations appear in the record, or explain how such documents would establish functional restrictions beyond those determined by the ALJ. It is well established that the "ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Daniels v. Commissioner*, 152 F. App'x 485, 489 (6th Cir. 2005); *see also Baranich v. Barnhart*, 128 F. App'x 481, 488 (6th Cir. 2005); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004). Review of the ALJ's opinion shows that he discussed plaintiff's medical records, including the records regarding plaintiff's diabetes, hypertension and low back impairments. (A.R. 16-20). I find that plaintiff's argument in this regard is meritless.

**3.**

Plaintiff's third claim of error is that the ALJ's credibility determination is not based on substantial evidence. (Plf. Brief at 15). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x at 488. This court does not make its own credibility determinations. *See Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) ("Our role is not to resolve conflicting evidence in the record, or to examine the credibility of the claimant's testimony."). "Under 42 U.S.C. § 405(g), the [Commissioner's] findings are conclusive, so long as they are supported by substantial evidence. Our review is limited to determining whether there is substantial evidence in the record to support the findings. 'Substantial evidence' means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Furthermore, we must defer to an agency's decision even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the [Commissioner]." *Wright*, 321 F.3d at 614 (citations omitted); *see also Baranich v. Barnhart*, 128 F. App'x 481, 486 (6th Cir. 2005); *Robinson v. Barnhart*, 124 F. App'x 355, 358 (6th Cir. 2005).

Plaintiff's daily activities undercut her subjective complaints of debilitating symptoms. *See Walters v. Commissioner*, 127 F.3d at 532; *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *see also Niemasz v. Barnhart*, 155 F. App'x 836, 839 (6th Cir. 2005); *Pasco v. Commissioner*, 137 F. App'x 828, 846 (6th Cir. 2005); *Chandler v. Commissioner*, 124 F. App'x 355, 358 (6th Cir. 2005). I find that the Commissioner's credibility determination is supported by more than substantial evidence.

Plaintiff's brief contains an argument that the "ALJ failed to comply" with SSR 96-8p and *Walters v. Commissioner*, 127 F.3d 525, 530 (6th Cir. 1987) (Plf. Brief at 16), yet fails to identify any opinion by a treating physician that failed to receive sufficient deference under the treating physician rule. Plaintiff also mentions the procedural requirement that the ALJ must state "good reasons" for rejecting a treating physician's medical opinion (Plf. Brief at 17), but fails to identify any corresponding defect in the ALJ's opinion. *See Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). Upon review, I find no violation of the treating physician rule or the procedural "good reasons" requirement.

Finally, plaintiff argues that the ALJ failed to develop the record regarding side effects from plaintiff's medication. (Plf. Brief at 17). Plaintiff was represented by counsel at the hearing. It was plaintiff's burden to produce medical records in support of her disability claim. It was not the ALJ's burden. *See Landsaw v. Secretary of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986); *see also Struthers v. Commissioner*, No. 98-1528, 1999 WL 357818, at * 2 (6th Cir. May 26, 1999) ("[I]t is the duty of the claimant, rather than the administrative law judge, to develop the record to the extent of providing evidence of mental impairment."); *Cook v. Chater*, No. 95-2254, 1996 WL 338525, at * 1 (6th Cir. June 18, 1996) ("burden of providing a complete record rests with plaintiff"). The ALJ's special duty to *pro se* parties to develop the record does not extend to plaintiff, because plaintiff had legal representation at the hearing. *See Trandafir v. Commissioner*, 58 F. App'x 113, 115 (6th Cir. 2003); *Rise v. Apfel*, No. 99-6164, 2000 WL 1562846, at * 2 (6th Cir. Oct. 13, 2000); *Hall v. Commissioner*, No. 98-6102, 1999 WL 685949, at * 3 (6th Cir. Aug 24, 1999); *Lashley v. Secretary of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983). Plaintiff's assertion that the ALJ failed to develop the record is frivolous.

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated: February 22, 2006              /s/  Joseph G. Scoville
                                      United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).